IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CHARLES PICKARD,                      )
                                      )
                  Plaintiff,          )
                                      )
            v.                        )        1:14CV583
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social         )
Security,                             )
                                      )
                  Defendant.          )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Charles Pickard, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 8, 10). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on May 19, 2011, alleging a disability onset date of December 1, 2008. (Tr. 169-75, 176-80.) Upon denial of those applications initially (Tr. 61-76, 103-08) and on reconsideration (Tr. 77-100, 112-29), Plaintiff requested a hearing de novo before an Administrative Law Judge

("ALJ") (Tr. 130-31). Plaintiff and his attorney attended the hearing. (Tr. 37-60.) By decision dated February 24, 2014, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 15-32.) On May 9, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-7), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2013.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 1, 2008, the alleged onset date.
>
> . . . .
>
> 3. [Plaintiff] has the following severe impairments: diabetes mellitus; hypertension; and obesity.
>
> . . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform the full range of medium work . . . .
>
> . . . .
>
> 6. [Plaintiff] is capable of performing past relevant work as a security officer. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.
>
> . . . .

> 7.  [Plaintiff] has not been under a disability, as defined in the [] Act, from December 1, 2008, through the date of this decision.

(Tr. 20-32 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a

3

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

4

to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

5

For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

6

claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ "erred by giving insufficient weight to the opinion of [Plaintiff's] treating source, Family Nurse Practitioner [] Virgil Mosu, whose opinion[,] if fully credited[,] would have required a finding that [Plaintiff] was disabled" (Docket Entry 9 at 3); and

(2) the ALJ contradicted himself by finding at part one of the Craig pain analysis that Plaintiff suffered from medical impairments which could reasonably be expected to produce his alleged pain, and then finding at part two that 'the objective medical evidence in the record [wa]s inconsistent with and does not support [Plaintiff's] allegations of disability'" (id. at 2 (citing

---

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

Tr. 28); see also id. at 6-8 (arguing that contradictions between two parts of Craig analysis warrant remand)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 11 at 5-15.)

**1.  Medical Source Statement of Virgil Mosu**

In Plaintiff's first issue on review, he faults the ALJ for not giving sufficient weight to the Medical Source Statement ("MSS") "of [Plaintiff's] treating source, Family Nurse Practitioner[] Virgil Mosu," which, "if fully credited[,] would have required a finding that [Plaintiff] was disabled." (Docket Entry 9 at 3 (referring to Tr. 473-79).) More specifically, Plaintiff disputes the ALJ's decision to give Nurse Practitioner Mosu's opinion "little weight" because "[Nurse Practitioner Mosu's] treatment notes do not document any ongoing symptom limitations, particularly those that would lead to such extreme limitations in [Plaintiff's] ability to work." (Id. at 4 (citing Tr. 30).)[5] Plaintiff's arguments on these points fall short.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding

---

[5] Plaintiff additionally argues that, because the ALJ found in Plaintiff's favor at part one of the credibility analysis, the ALJ implicitly found that, "according to the objective evidence, [Plaintiff's] impairments are 'reasonably *likely* to cause' the pain and [other] symptom[s] alleged, in the amount and degree alleged" (Docket Entry 9 at 4-5 (emphasis in original) (internal footnote omitted)), thus further supporting Nurse Practitioner Mosu's opinions. Plaintiff, however, neglects to address the ALJ's finding at part two of the credibility analysis that Plaintiff's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible" (Tr. 27). (See Docket Entry 9 at 4-5.)

8

the nature and severity of a claimant's impairment.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").  The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference.  The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion.  See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record.  See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4).  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 590 (emphasis added).

In this case, on September 26, 2013, Nurse Practitioner Mosu completed an MSS in which he reported that Plaintiff suffered from "[d]iabetes, [hypertension], obesity, [an] enlarged prostate,

9

[h]epatitis C, [diabetic] neuropathy, [a history] of colon cancer, [d]epression, [b]ipolar disease, [and] a ventral hernia." (Tr. 473.) According to Nurse Practitioner Mosu, as a result of those impairments, Plaintiff suffered from moderate daily leg pain, difficulty with balance, impaired sleep, an abnormal gait, trouble with attention and concentration, and moderate limitation in his ability to handle stress. (Tr. 473-74.) Ultimately, Nurse Practitioner Mosu opined that Plaintiff could perform less than a full range of sedentary work (including significant limitations on his ability to stand/walk, sit, lift, balance, and stoop; a need to rest during an eight-hour work day in excess of standard breaks; and absence from work in excess of three days per month). (Tr. 474-79.)

The ALJ detailed the findings in Nurse Practitioner Mosu's treatment notes at both step two and the RFC formulation stage of the SEP (see Tr. 21-24, 28) and then assessed Nurse Practitioner Mosu's opinions twice in his decision:

> [T]he undersigned does not find [Nurse Practitioner Mosu's MSS] persuasive and it is accorded no probative weight. . . . [Nurse Practitioner] Mosu has treated [Plaintiff] for over three years, since early 2011, and his treatment notes do not document any of [Nurse Practitioner Mosu's] reported ongoing limitations. Because his treatment notes consistently indicate that [Plaintiff] is not in any pain, his physical examinations are normal, that he has no motor or sensory deficits, and that he walks with a normal gait, the undersigned finds that [an RFC] . . . which limits [Plaintiff] to medium exertional work more than adequately accounts for his impairments.

10

>             . . .
>
> As stated above, . . . the undersigned gives this opinion
> little weight, as it is inconsistent with [Plaintiff's]
> ongoing treatment notes, including those from [Nurse
> Practitioner] Mosu. As stated above, [Nurse
> Practitioner] Mosu has treated [Plaintiff] for over three
> years, since early 2011, but his treatment notes do not
> document any ongoing symptoms limitations, particularly
> those that would lead to such extreme restrictions in
> [Plaintiff's] ability to work. As summarized [elsewhere
> in the decision], [Plaintiff's] ongoing treatment notes
> consistently indicate that he is not in any pain, his
> physical examinations are normal, that he has no motor or
> sensory deficits, and that he walks with a normal gait.

(Tr. 28-29, 30.)

As an initial matter, nurse practitioners do not constitute "acceptable medical sources," see 20 C.F.R. §§ 404.1513(a), 416.913(a), but rather "other sources," see 20 C.F.R. §§ 404.11513(d), 416.913(d), whose opinions cannot receive controlling weight. Moreover, the ALJ properly evaluated Nurse Practitioner Mosu's opinions under the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

First, the ALJ justifiably discounted Nurse Practitioner Mosu's opinions in part on the basis that his own treatment notes failed to support his opinions. The ALJ correctly observed that Nurse Practitioner Mosu's treatment notes consistently showed normal physical examinations and that Plaintiff reported no pain. (Tr. 28, 30; see also Tr. 289, 293, 324, 326, 328, 330, 331, 333, 335, 397, 402, 403, 405, 406, 407, 411, 413, 418, 420, 422, 424.)

11

Second, in accord with the regulations, the ALJ found Nurse Practitioner Mosu's opinions inconsistent with other medical evidence of record. (Tr. 30.) In that regard, the ALJ specifically discussed treatment records from Dr. James Hathorn, Dr. Jan Harrison, Dr. Catherine Coombs, and Dr. Kimberly Hoang which showed generally unremarkable physical examinations with good range of motion, full strength, normal sensation, reflexes, and pulses, no edema, and normal gait (Tr. 21, 22, 23 (citing Tr. 245, 298, 361, 454)), as well as opinions from a state agency consultant, Dr. Harrison, and Dr. Coombs that conflicted with Nurse Practitioner Mosu's opinions (Tr. 29 (citing Tr. 77-87, 300, 340, 369)).

In sum, Petitioner has shown no basis for relief arising from the ALJ's decision to discount the opinions of Nurse Practitioner Mosu.

## 2. Credibility

Plaintiff also maintains that "it is legally impossible to 'pass' *Craig* Step One without the objective medical evidence supporting [Plaintiff's] pain allegations," and thus that the ALJ's "later finding that the objective medical evidence did not support [Plaintiff's] subjective complaints of pain" constitutes a "glaring" "self-contradiction" warranting reversal. (Docket Entry 9 at 6-7.) Plaintiff overstates the breadth of an ALJ's finding at part one of the Craig credibility analysis. When an ALJ finds in

12

a claimant's favor at part one, he or she merely finds that objective medical evidence shows that the claimant possesses <u>impairments</u> that could reasonably be expected to cause the symptoms alleged, and not that the claimant actually suffers from the <u>symptoms</u> alleged.  See <u>Policy Interpretation Ruling Titles II and XVI:  Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements</u>, SSR 96-7p, 1996 WL 374186, at *2; <u>Craig</u>, 76 F.3d at 594; 20 C.F.R. §§ 404.1529(b), 416.929(b).  That distinction holds significance, as only at part two does an ALJ analyze the actual degree of the claimant's symptoms.  SSR 96-7p, 1996 WL 374186, at *2; <u>Craig</u>, 76 F.3d at 595; 20 C.F.R. §§ 404.1529(c), 416.929(c).  Here, at part two, the ALJ expressly found that Plaintiff's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible . . . ." (Tr. 27), and Plaintiff does not attack the soundness of that finding (<u>see</u> Docket Entry 9 at 6-8).

Accordingly, Plaintiff's arguments related to symptom reporting warrant no relief.

### III.  CONCLUSION

Plaintiff's assignments of error lack merit.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) be denied, that

13

Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, and that this action be dismissed with prejudice.

<pre>
                                    /s/ L. Patrick Auld
                                     L. Patrick Auld
                              United States Magistrate Judge
</pre>

August 4, 2015

14

Case 1:14-cv-00583-TDS-LPA   Document 12   Filed 08/04/15   Page 14 of 14